238

ROBERT S. FARRELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100139.   Promulgated April 23, 1941.

*Ashley Greene, Esq.*, for the petitioner.
*B. M. Coon, Esq.*, for the respondent.

OPINION.

ARNOLD: This proceeding involves a deficiency in income tax for 1936 in the sum of $394.53. The issue is whether petitioner is entitled to a deduction of $4,843.13 as (1) interest paid, or (2) as an ordinary and necessary business expense, or (3) as a loss incurred during the taxable year and not compensated for by insurance or otherwise. The parties filed a written stipulation of facts, which are adopted as our findings of fact, and the pertinent portions thereof are hereinafter summarized.

The petitioner resides in Portland, Oregon, and filed his income tax return for the taxable year with the collector of internal revenue at Portland. In computing his income he claimed a deduction for "interest paid" of $4,843.13. The disallowance of this deduction was one of the adjustments made by respondent which resulted in the present deficiency.

Petitioner paid out the amount deducted under the following circumstances: In 1927 he was vice president and a director of the Morgan-Bushong Investment Co., an Oregon corporation organized in 1912, which owned and operated an office building in Portland. During 1927 the capital stock of the Morgan-Bushong Investment Co., hereinafter referred to as the company, issued and outstanding, consisted of 3,142 common shares having a par value of $314,200.

During 1927 the company paid cash dividends as follows:

| | |
|---|---:|
| January | $15,710 |
| May | 15,710 |
| July | 62,040 |
| July | 315,000 |
| Total | 408,460 |

At January 1, 1927, the company had a surplus of $83,995.96. In its income tax return it reported taxable income of $49,700.87 and it had nontaxable income of $476.25. During 1927 the company added $315,000 to its surplus account as "appreciation by appraisal", which resulted from an appraisal of its assets on or about April 18, 1927. The appraisal showed the replacement cost in 1927 of a building constructed in 1913 to be approximately $1,035,000 which gave a value of $765,900 for the building in 1927, allowing 2 percent depreciation for 13 years.

Prior to June 4, 1927, the company's outstanding bond issue had been reduced to $53,000, and negotiations were entered into on or about that date relative to placing a new bond issue on the property in the aggregate principal amount of not to exceed $500,000. Proceeds of the bond issue were to be used to retire existing bonds and for other corporate purposes including payment of current liabilities, expenses of securing the loan and issuing the bonds, and the declaring of a dividend estimated to equal $120 to $125 per share.

At a directors' meeting held on July 29, 1927, it was determined that the company's books reflected no good will value in its assets, that the earnings of the company had been satisfactory and its dividends had not been large, and that the appraisal and other estimates of value of the building showed that the property was worth in excess of its book value. After a thorough discussion the secretary was authorized and instructed to set up on the books an account to be known as "good will and appraisement of building", in the amount of $315,000, and a corresponding credit to an account to be known as "surplus by appraisement." The petitioner and Charles A. Shea and Grant Phegley attended this meeting of the board of directors.

Thereafter bonds were issued and dividends paid in July 1927, in accordance with the authorization of the stockholders and directors of the company.

During 1928 to 1930, inclusive, the company operated at a profit and paid the interest on its outstanding bonds. In 1931 the company sustained a large loss and defaulted on interest payments. The arrears increased during 1932 and 1933 and the bondholders threatened action against the directors on account of the dividends paid in July 1927.

The Oregon Code, at all times material, provided as follows, section 25–219:

If the directors of a corporation declare and pay dividends when the corporation is insolvent, or which render it insolvent, or pay dividends out of assets other than net profits or surplus, such directors shall be jointly and severally liable for the debts of the corporation then existing or incurred while they remain in office to the extent of such dividends so declared * * *.

As a result of the threatened action petitioner and Charles A. Shea and Grant Phegley, who were directors in 1927, entered into an agreement with a committee for the bondholders whereby the latter released the directors from any liability arising from the dividend distribution by the company during 1927 in consideration of their undertaking and agreement, for each of the four years beginning November 30, 1932, and expiring November 30, 1936, to supply for distribution to the bondholders the funds necessary to meet any deficiency in any year's net income which failed to provide 6 percent upon the unpaid principal of the company's outstanding bonds of July 15, 1927. The agreement limited the liability of the "Guarantors" to 3 percent upon the bonds, provided for the deposit of collateral by the "Guarantors", and contained various other provisions regarding payment, computation of net income, etc., not here material. The agreement was executed December 30, 1933.

As between themselves, petitioner and Charles A. Shea and Grant Phegley agreed that they would make the payments guaranteed to the bondholders in the proportions of one-half by Charles A. Shea, three-eighths by petitioner, and one-eighth by Grant Phegley, and that the collateral deposited under the agreement had all been deposited by Shea and petitioner, and should be returned to them when the obligations to the bondholders were fully performed. The collateral security deposited by petitioner consisted of 1,000 shares of Caterpillar Tractor Co. stock.

During the taxable year 1936 the income of the company was insufficient to pay the interest on its bonds held by the aforesaid bondholders' committee, and petitioner was called upon to pay and did pay "$4,843.13 as interest on the said bonds pursuant to" the agreement with the bondholders' committee. Petitioner sustained a loss during the taxable year of $4,843.13 that was not compensated for by insurance or otherwise.

Petitioner contends that he is entitled to the deduction either as interest, as an ordinary and necessary business expense, or as a loss. Although the argument is in the alternative, we deem it unnecessary to consider the first two contentions advanced since, in our opinion, the amount is deductible as a loss not compensated for by insurance or otherwise.

The stipulated facts show that petitioner paid $4,843.13 during 1936 pursuant to his agreement that bondholders would receive at least 3 percent on their bonds for a period of four years. Our examination of the agreement convinces us that it was a contract of guaranty, *Howell* v. *Commissioner*, 69 Fed. (2d) 447; certiorari denied, 292 U. S. 654, which was given the bondholders in consideration of their release of petitioner, among others, from any and all liability, claims,

demands, and causes or rights of action against him as a director or stockholder growing out of the declaration and payment of dividends in July 1927. The guaranty definitely grew out of and resulted from petitioner's business relationship to the company. The payment by petitioner was made under a promise to the bondholders that, if the earnings of the company were insufficient to pay the 6 percent interest due on its bonds, petitioner and Shea and Phegley would pay at least 3 percent on the bonds. The payment was clearly a loss, *Morris Sass*, 12 B. T. A. 156, and petitioner is entitled to the deduction under section 23 (e) of the Revenue Act of 1936, *Charles R. Stuart*, 38 B. T. A. 1147, and cases cited therein; *M. P. Sturdivant*, 23 B. T. A. 1385. Since other adjustments were involved, the deficiency must be recomputed.

*Decision will be entered under Rule 50.*